754 F.2d 955
 1 Fed.R.Serv.3d 639, Medicare&Medicaid Gu 34,536
 Alma A. APPLEYARD et al., Plaintiffs,
Pearl Snyder, as personal representative of Elizabeth J.
Beasley, deceased, Virginia Rasch, Jackie Causey, and Ronald
Pierce, as personal representative of Elizabeth Grimes,
deceased, Plaintiffs-Appellants,
v.
George C. WALLACE, Governor of the State of Alabama, as
"Single State Agency," for Administration of the
Alabama Medicaid Program, et al.,
Defendants-Appellees.
 No. 84-7050.
 United States Court of Appeals,
Eleventh Circuit.
 March 8, 1985.
 
 Clayton Davis, Carol Wallace, Tuscaloosa, Ala., H. Floyd Sherrod, Florence, Ala., Guy M. Hicks, Supervising Atty., ADDAP, Tuscaloosa, Ala., for plaintiffs-appellants.
 Robert H. Harris, Terry K. Childers, Montgomery, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and THORNBERRY*, Senior Circuit Judge.
 THORNBERRY, Senior Circuit Judge:
 
 
 1
 The plaintiffs brought suit against the Governor of Alabama and the Commissioner of the Alabama Medicaid Agency, alleging that Alabama's Medicaid level of care admission criteria violated the Federal Social Security Act, the Civil Rights Act, and the equal protection and due process clauses of the constitution. While the action was pending in district court Alabama revised the challenged criteria. The district court subsequently denied the plaintiffs' motion for class certification and dismissed the action as moot and barred by the eleventh amendment. The plaintiffs appeal. We vacate the district court's order denying the plaintiffs' motion for class certification and dismissing the action and remand for further proceedings consistent with this opinion.
 
 FACTS
 
 2
 The five named plaintiffs in this action[1] each had been denied Medicaid nursing home benefits on the grounds that they did not meet the level of care criteria embodied in Rule 560-X-10.13, Alabama Medicaid Agency Administrative Code. Under that rule applicants for nursing home benefits were required to show that they needed medical care and associated services that could be provided only in a nursing home. The rule listed a number of criteria, each describing a particular type of such medical care or service (e.g. "tube feeding per gastrostomy"). To qualify for benefits the applicant was required to meet a specified number of the listed criteria.
 
 
 3
 The plaintiffs brought this action challenging the level of care criteria on June 24, 1983. In their complaint they alleged that the criteria violated the Social Security Act, the Civil Rights Act, and the constitution. They sought declaratory and injunctive relief and purported to represent a class consisting of "all persons in the State of Alabama who have applied for Medicaid care and treatment in nursing homes who are financially eligible for such Medicaid who have been denied Medicaid under the Alabama level of care admission criteria." The record indicates that there are approximately 1,200 members of the putative class.
 
 
 4
 While the case was pending in the district court, Alabama revised the challenged level of care criteria and began to provide Medicaid nursing home benefits to all the named plaintiffs. The challenged version of the rule was in effect from April 1982 through September 1983. The plaintiffs do not challenge the validity of the new rule. On September 26, 1983, the district court held a hearing to consider the plaintiffs' motion for class certification and the defendants' motion to dismiss. Subsequently, the district court issued its Order and Opinion, denying the plaintiffs' motion for class certification and dismissing the action.
 
 
 5
 In denying class certification the district court stated:
 
 
 6
 A review of the Medicaid admissions procedure, a process which includes opportunities for applicants to present information concerning their individual applications at both a fair hearing and a reconsideration, indicates that Medicaid eligibility decisions are based on a consideration of widely varrying medical backgrounds. The vast factual differences surrounding the medical condition of each of the named Plaintiffs prevent these Plaintiffs from having claims or defenses which would be typical of all members of the putative class.
 
 
 7
 The court also asserted that the claims of the named plaintiffs "could hardly be typical of those of the members of the purported class" since the plaintiffs were then receiving nursing home benefits.
 
 
 8
 In dismissing the action the district court held that
 
 
 9
 [i]n light of the fact that all of the named Plaintiffs are currently receiving the Medicaid benefits which they sought, this Court is of the opinion that the case at bar is now moot and must be dismissed under Article III of the United States Constitution, which confers jurisdiction only over cases and controversies.
 
 
 10
 The court also noted that any claim for retroactive benefits would be barred by the eleventh amendment under Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
 
 
 11
 On appeal the plaintiffs contend (1) that the district court abused its discretion in refusing to certify the class and (2) that the case is not moot or barred under the eleventh amendment since the plaintiffs have a live claim for notice relief under Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).[2]
 
 I. Class Certification
 
 12
 The district court refused to certify the class action, stating that "[t]he vast factual differences surrounding the medical condition of each of the named Plaintiffs prevent these Plaintiffs from having claims or defenses which would be typical of those of all members of the putative class." The plaintiffs contend that the court misapplied the typicality requirement of Rule 23(a)(3) of the Federal Rules of Civil Procedure and, thereby, abused its discretion in refusing to certify the class. We agree.
 
 
 13
 Rule 23(a) specifies four prerequisites to maintaining a suit as a class action:
 
 
 14
 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 
 
 15
 Although the considerations of subsections a(2), a(3), and a(4) tend to overlap, see De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225 (7th Cir.1983); 7 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1764 (1972), "subsection a(3) primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." 713 F.2d at 232. Moreover, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." Id.; see also Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1189 (10th Cir.1975). Thus, courts have found that a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences. See, e.g., De La Fuente, 713 F.2d at 232, Donaldson v. Pillsbury Co., 554 F.2d 825 (8th Cir.), cert. denied, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); Penn v. San Juan Hospital, 528 F.2d at 1189; Calkins v. Blum, 511 F.Supp. 1073, 1088 (N.D.N.Y.1981), aff'd, 675 F.2d 44 (2d Cir.1982); Wilder v. Bernstein, 499 F.Supp. 980, 992-993 (S.D.N.Y.1980).
 
 
 16
 In this case the district court was concerned by the "vast factual differences surrounding the medical condition of each of the named Plaintiffs." These factual distinctions, however, have little or no relevance to the relief requested by the plaintiffs. In their complaint the plaintiffs asked that the court (1) declare the level of care criteria invalid, (2) order reinstatement of the previous criteria pending development of new criteria (the complaint was drafted before Alabama revised the challenged criteria), (3) declare the policies and customs of the defendants invalid, and (4) enjoin the defendants from determining any member of the class to be ineligible for benefits without full compliance with applicable federal law. It does not appear that the factual differences surrounding the medical conditions of the various plaintiffs would preclude the district court from determining whether the plaintiffs are entitled to the relief they seek. The similarity of the legal theories shared by the plaintiffs and the class at large is so strong as to override whatever factual differences might exist and dictate a determination that the named plaintiffs' claims are typical of those of the members of the putative class.[3]
 
 
 17
 The defendants suggest, nevertheless, that the determination of typicality in this case is controlled by our decision in Love v. Turlington, 733 F.2d 1562 (11th Cir.1984). We do not agree. In that case we held that the district court did not abuse its discretion in denying class certification on the grounds that the plaintiffs failed to meet the commonality and typicality requirements of Rule 23(a). The plaintiff challenged the constitutionality of Florida's State Student Assessment Test, a basic skills test administered to all eleventh graders in the state. The test was designed to identify students who had not mastered one or more of the minimum performance standards defined in the applicable state regulations. Although students who failed the test were targeted for remedial assistance, the determination of whether a student failing the test was ultimately eligible for a diploma was made by individual teachers on the basis of the individual student's achievements. Id. at 1564. "Each student's situation differs, and the diploma is denied each student for reasons which are unique to his situation, and which do not necessarily correspond to his performance on the [test]." Id.
 
 
 18
 This case is, therefore, distinguishable from Love in that in Love a student's performance on the challenged test was only one factor among a number of other unrelated factors considered in determining the student's eligibility for a diploma. In this case, however, the challenged rule is the sole basis upon which the plaintiffs were denied Medicaid nursing home benefits. The Rule states specifically that "[a]ll new admissions to nursing care facilities for coverage under Medicaid must be prior authorized by AlaMed as meeting the medical need criteria outlined below." Rule 560-X-10.13(1), Alabama Medicaid Agency Administrative Code. In Love we noted the same sort of distinction we make today:
 
 
 19
 Plaintiff's attempt to analogize this case to Debra P. v. Turlington, 644 F.2d 397 (5th Cir.1981), in which class certification was granted, is unsuccessful because of the disparity between the uses and effects of the tests at issue in the two cases. Debra P. concerned the so-called SSAT-II or "functional literacy test," which determined whether or not high school students throughout Florida would receive diplomas, regardless of their academic records. Commonality and typicality were clearly present. In contrast, the [test involved in Love ] simply identifies, for the purposes of remediation, those students who are substandard in certain areas.
 
 
 20
 733 F.2d at 1564. Because a failure to meet the criteria of the rule challenged by the plaintiffs in this case would mean a denial of Medicaid benefits, we think that the rule is more akin to the functional literacy test in Debra P., the failure of which would render a student ineligible for a diploma, than the test in Love. Therefore, we cannot accept the defendant's argument that Love is dispositive of the issue of typicality in this case.
 
 
 21
 Finally, the defendants contend that even if the plaintiffs satisfied the requirements for maintaining a class action, the district court properly refused to certify the class because class status is unnecessary for the plaintiffs to obtain the declaratory and injunctive relief they seek. They argue that since Alabama would conform its rules and conduct to the court's decree regardless of whether the action is maintained in class form, class certification would lead only to unnecessary expenditures of time and money in the course of the litigation. This argument ignores, however, that the plaintiffs have requested notice relief under Quern v. Jordan.[4] Indeed, the plaintiffs "would be unable to obtain classwide notice if no class action [is] certified since the other eligible recipients would not be parties to this litigation and would not be entitled to the benefits of the district court's judgment." Mitchell v. Johnston, 701 F.2d 337 (5th Cir.1983). Class certification is therefore necessary.
 
 II. Quern v. Jordan Notice Relief
 
 22
 The plaintiffs contend that they have a live claim for an order requiring the defendants to send a notice to the members of the putative class advising them that they were denied Medicaid nursing home benefits under invalid criteria and that a state administrative procedure is available to determine whether they are entitled to past benefits. They argue that this type of notice relief is specifically excepted from the application of the eleventh amendment by Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and its progeny. The plaintiffs contend, therefore, that the district court should not have dismissed the action as moot and barred by eleventh amendment. We agree. We therefore vacate the district court's order dismissing the action and remand for the district court to consider the validity of the level of care criteria in question. If the district court determines, as the plaintiffs have alleged, that the criteria were invalid, it should design such notice relief as is consistent with this opinion and the authority of Quern and its progeny.
 
 
 23
 Quern was the sequel to the Supreme Court's decision in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In Edelman the plaintiffs brought a class action seeking injunctive and declaratory relief against Illinois officials administering the federal-state program for Aid to the Aged, Blind, and Disabled, contending that the officials were administering the program in a manner inconsistent with various federal regulations and the fourteenth amendment. The district court declared certain state regulations invalid and granted a permanent injunction requiring compliance with the applicable federal regulations. The court also ordered the state officials to "release and remit benefits wrongfully withheld." The Court of Appeals for the Seventh Circuit affirmed the district court's decision.
 
 
 24
 The Supreme Court then reversed the Seventh Circuit, holding that the eleventh amendment constitutes a bar to that portion of the district court's decree which awarded retroactive benefits. In distinguishing this type of relief from that approved by the Court in Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Court noted that the relief in Edelman "requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation."
 
 
 25
 In Ex Parte Young, the watershed case of eleventh amendment jurisprudence, the Supreme Court held that the eleventh amendment did not bar a federal action seeking to enjoin the Attorney General of Minnesota from enforcing a statute alleged to violate the constitution. The Court's rationale for the decision was that it was not a suit against the state, which would fall under the eleventh amendment prohibition,[5] but against a state official in his individual capacity. It is clear, nonetheless, that the injunction issued in Ex Parte Young was not totally without effect on the state treasury. Noting that fact, the Edelman Court stated:
 
 
 26
 The fiscal consequences to state treasuries in these [Ex Parte Young type] cases were the necessary result of compliance with decrees which by their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect is a permissible and inevitable consequence of the principle announced in Ex Parte Young.
 
 
 27
 415 U.S. 667-668, 94 S.Ct. 1358 (emphasis ours). This analysis laid the predicate for the Court's decision in Quern.
 
 
 28
 After the Court's remand in Edelman, the district court ordered the Illinois officials to send to each member of the plaintiff class a notice stating: "You were denied public assistance to which you were entitled in the amount of __________." Jordan v. Trainor, 405 F.Supp. 802, 809 (N.D.Ill.1975). A "Notice of Appeal," which when signed and sent to the Illinois Department of Public Aid requested a hearing on the denial of benefits, was to be sent along with the notice.
 
 
 29
 The Seventh Circuit sitting en banc reversed the district court holding that the proposed form of notice would violate the eleventh amendment since it purported to decide that Illinois public funds should be used to satisfy the claims of the class members without the consent of the state. Jordan v. Trainor, 563 F.2d 873, 875 (7th Cir.1977) (en banc ). In remanding the case, the Court of Appeals noted that a "mere explanatory notice to applicants advising them that there is a state administrative procedure available if they desire to have the state determine whether or not they may be eligible for past benefits" would pass eleventh amendment muster. The court also stated that "[a] simple returnable notice of appeal form" could be included with the explanatory notice. Id. The basis of the court's approval of this form of relief was that it
 
 
 30
 would not create a "liability" against the state. Whether a liability might result would be a matter for state determination, not the federal court. No federal judgment against the state would be created. Such a notice could not be labeled equitable restitution or be considered an award of damages against the state.
 
 
 31
 Id. at 876.
 
 
 32
 The Supreme Court then heard the case sub nom. Quern v. Jordan and affirmed the Seventh Circuit's proposed form of notice relief. The Court held that the notice relief "falls on the Ex Parte Young side of the eleventh amendment." 440 U.S. at 347, 99 S.Ct. at 1148. The Court refused to accept the petitioners' argument that the proposed notice would lead inexorably to the payment of state funds for retroactive benefits and, thereby, violate the eleventh amendment.
 
 
 33
 Whether a recipient of notice decides to take advantage of those available state procedures is left completely to the discretion of that particular class member; the federal court plays no role in that decision. And whether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts, and legislature, not with the federal court.
 
 
 34
 Id. at 348, 99 S.Ct. at 1149. Harking back to the language of the Edelman decision, the Court reasoned that "[t]he notice approved by the Court of Appeals, unlike that ordered by the District Court, is more properly viewed as ancillary to the prospective relief already ordered by the court." Id.
 
 
 35
 The plaintiffs contend that they have a live claim for Quern notice relief and, therefore, that the district court should not have dismissed their suit as moot and barred by the eleventh amendment. We agree. The defendants' only response to the plaintiffs' argument that they are entitled to Quern notice is that such relief is not available where the district court has properly denied class certification. However, because we have determined that the district court erred in denying class certification, the defendants' argument requires no further consideration.
 
 
 36
 We note, nevertheless, that this case presents another interesting issue: What is the meaning of the Supreme Court's statement in Quern that the notice relief "is more properly viewed as ancillary to the prospective relief already ordered by the court."[6] 440 U.S. at 349, 99 S.Ct. at 1149. It may be argued that the significance of the word "ancillary" in Quern goes beyond its meaning in Edelman, in which the Court referred to the costs to the state treasuries of complying with prospective orders as a permissible "ancillary effect." 415 U.S. at 668, 94 S.Ct. at 1358. In Quern "ancillary" ostensibly refers to the notice itself, not the cost of the notice. The case could therefore be interpreted as requiring that some actual injunctive, declarative, or other prospective relief, aside from the notice itself, together with a concomitant determination that the defendants acted illegally, precede an award of notice relief. Subsequent case law and an analysis of the Court's reliance on Milliken v. Bradley, 433 U.S. 267, 290, 97 S.Ct. 2749, 2762, 53 L.Ed.2d 745 (1977), indicate, however, that the Court did not intend such a result.
 
 
 37
 In Silva v. Vowell, 621 F.2d 640 (5th Cir.1980), reh. en banc denied, 625 F.2d 1016 (5th Cir.1980), cert. denied, 449 U.S. 1125, 101 S.Ct. 941, 67 L.Ed.2d 111 (1981),[7] the plaintiffs brought a class action suit challenging the Texas incapacity eligibility standard for receipt of benefits under the Aid to Families with Dependent Children Program. As initially brought, the class action contested primarily the rule that disqualified the families of dependent children if the father was "capable of light work." During the course of the litigation Texas revised the rule, and the plaintiffs conceded that their claim for injunctive relief from the "capable of light work" requirement was thereby mooted. Nevertheless, even though the district court refused to award retroactive benefits, it certified the class and ordered the defendants to pay for preparing and mailing an explanatory Quern -type notice to the class members. The notice, which was approved by the parties, provided:
 
 
 38
 The United States District Court for the Southern District of Texas, Brownsville Division, has ruled that the disability standard under which your application or claim for AFDC-I benefits may have been evaluated did not conform to federal standards. The Texas AFDC-I standard has now been changed. If you desire, you may file a new application for AFDC-I benefits. Your evaluation will be evaluated under the new standard. To file your application or to obtain further information, please contact your local office of the Texas Department of Human Resources.
 
 
 39
 On appeal, the Fifth Circuit approved this form of notice with some slight modification.[8]
 
 
 40
 In his dissent, Judge Tjoflat raised the concern that Quern relief may not be available where no other prospective relief has been granted:
 
 
 41
 I cannot concur with the majority's approval of the district court's order requiring the defendants to bear the expense of preparing and mailing the explanatory notice to all class plaintiffs who have been denied AFDC benefits under the "capable of light work" standard. Ordinarily, a court has no power to grant relief, even equitable relief, once the claim for relief has become moot. The obvious reason is that an order granting relief may only follow a determination of liability; there can be no such determination where the claim is mooted.
 
 
 42
 621 F.2d at 656. This analysis presupposes, however, that Quern notice is some unnamed legal right that exists only ancillary to prospective relief rather than relief itself bearing ancillary costs.
 
 
 43
 Responding to Judge Tjoflat's dissent, the court stated that "[t]he plaintiffs' claim for a notice to the class was not mooted by the revision of the regulations, any more than a claim for pre-revision damages would have been." 621 F.2d at 651 n. 13. That conclusion is thoroughly logical. We cannot see any basis upon which to distinguish Quern notice from other forms of equitable relief permissible under the eleventh amendment. That a claim for injunctive relief becomes moot should not, therefore, moot a separate claim for Quern notice.
 
 
 44
 As the Silva court noted, 621 F.2d at 652, this conclusion is borne out by an examination of the Supreme Court's citation of Milliken v. Bradley to support its statement that the notice "is more appropriately viewed as ancillary to the prospective relief already ordered by the court." 440 U.S. at 349, 99 S.Ct. at 1149. In Milliken the Supreme Court held that a decree that the state share in the future costs of educational components fit squarely within the prospective-compliance exception reaffirmed by Edelman. 433 U.S. 267, 290, 97 S.Ct. 2749, 2762, 53 L.Ed.2d 745 (1977). The Court's reliance on Milliken in Quern indicates, therefore, that it is the cost of the notice that is ancillary, not the notice itself.
 
 
 45
 We note that this conclusion also comports with an examination of the context of the statement in Quern that the notice is "more properly viewed as ancillary." That statement appears to be the conclusion of the Court's discussion of why the cost of sending the notice does not render it barred by the eleventh amendment. See Quern, 440 U.S. at 347-350, 99 S.Ct. at 1148-1150. We might restate the Court's language to provide that the notice relief is not barred by the eleventh amendment since the cost of that notice is more properly characterized as ancillary.
 
 
 46
 For the aforementioned reasons we vacate the district court's order denying class certification and dismissing the action, and we remand for further proceedings consistent with this opinion.
 
 
 47
 VACATED and REMANDED.
 
 
 
 *
 Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Plaintiff Appleyard does not join this appeal. Plaintiffs Beasley and Grimes have died during the pendency of the appeal, but are present in the action through their personal representatives
 
 
 [2]
 The plaintiffs do not pursue a challenge to the district court's holding that their claim for declaratory relief was moot. In their complaint the plaintiffs sought a declaration that the level of care criteria were invalid. Although we do not decide the issue, we note that there is at least some authority for the proposition that a claim for a declaratory judgment that a rule is invalid is not necessarily mooted when the rule is revised or the plaintiffs made eligible in the future for benefits that they were denied under the former rule. In some circumstances, "amendment of a challenged legislative rule does not moot an attack on the former provisions. The most obvious reasons for denying mootness are that the former provisions continue to control the consequences of past transactions, or that damages or monetary relief may be claimed on account of the former provisions." 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3533.6 (1984); see also Kirchberg v. Feenstra, 450 U.S. 455, 459 n. 6, 101 S.Ct. 1195, 1198 n. 6, 67 L.Ed.2d 428 (1981); Hawkins v. Moss, 503 F.2d 1171, n. 1 (4th Cir.1974), cert. denied, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975). In this case, the provisions of the old rule control any claims the plaintiffs may have against Alabama for back payments. That the eleventh amendment prohibits the district court from awarding back payments may not be dispositive of the issue of mootness of the claim for a declaratory judgment. The issue is of little import, however, since our decision in this case will require the district court to decide the validity of the rule in question
 
 
 [3]
 Moreover, we note that "[i]n considering a question under Rule 23(a)(3), the court should keep in mind that it has the authority under Rule 23(c)(1) and Rule 23(c)(4) to shape the contours of the action by allowing class treatment for only some of the issues or by dividing the original class into subclasses." 7 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1764 (1972). The district court, therefore, would not be required to refuse class certification even if one of the plaintiffs' claims failed, due to the varying medical conditions of the plaintiffs, to meet the typicality requirement of Rule 23(a)(3)
 
 
 [4]
 Although the plaintiffs did not in their complaint request notice relief, we conclude that they sufficiently raised the issue in their Memorandum in Support of Motion for Determination that Action is a Class Action as to Plaintiffs:
 A class action is needed to require AlaMed to give notice to the members of the class that their applications for Medicaid Nursing Home assistance were denied under invalid criteria and that they have the opportunity to reapply and be considered under the appropriate standards.... With regard to these individuals it is appropriate that they be given notice of the available state remedies for retroactive benefits pursuant to Quern v. Jordan.
 The record indicates that the defendants were fully apprised of the plaintiffs' claim for notice relief and, in fact, submitted a detailed response to it.
 
 
 [5]
 The eleventh amendment provides:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 [6]
 Although not briefed, this point was raised and discussed at oral argument
 
 
 [7]
 This case is, of course, binding precedent in this Circuit. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding upon the Eleventh Circuit unless and until they are overruled by the Eleventh Circuit sitting en banc. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981)
 
 
 [8]
 Because the court vacated the district court's ruling that another of the rules in question violated the constitution, it limited the notice to only those class members who were denied benefits under the "capable of light work" requirement. 621 F.2d at 651