Robert **LAWSON, et al., Plaintiffs,**

**v.**

**Louie L. WAINWRIGHT, et al., Defendants.**

**No. 83–8409–Civ–Aronovitz.**

United States District Court,
S.D. Florida,
Miami Division.

Jan. 2, 1986.

Peter M. Siegel, Randall C. Berg, Jr., Florida Justice Institute, Inc., Miami, Fla., for plaintiffs.

Carl J. Zahner, Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

## ORDER CERTIFYING CAUSE AS A CLASS ACTION

ARONOVITZ, District Judge.

THIS CAUSE came on for an evidentiary hearing before the Court upon Plaintiff's Motion for Class Certification (D.N. 101). At the hearing held Monday, December 9, 1985, counsel for all parties appeared, called witnesses, introduced documents, and presented their views on whether or not the instant Cause should be certified as a class action pursuant to Federal Rule of

Civil Procedure 23. The Court has received evidence, heard argument of counsel, and considered the underlying motion, the supporting and opposing memoranda filed thereto, the pertinent portions of the record including the Magistrate's Report which recommends certification (D.N. 112), and the applicable law. Upon careful consideration of the same and being otherwise fully advised in the premises, it is thereupon:

ORDERED AND ADJUDGED that Plaintiff's motion be, and the same is, hereby GRANTED. The instant Cause is hereby CERTIFIED with respect to Counts I and II of the Amended Complaint as a Class Action pursuant to Federal Rule of Civil Procedure 23(b)(2). The subject class shall include those persons who fulfill the following qualifications:

> All persons currently confined, or who will be confined in the future, in institutions operated by Florida's Department of Corrections and who are members of, or seek to learn about, the Hebrew Israelite faith and who desire to receive and discuss religious literature prepared by the Temple of Love, and who have been denied the opportunity to receive such religious literature, discuss such religious beliefs with other individuals, and worship according to the tenets of the Hebrew Israelite faith.

This is a civil rights action, arising under the Constitution of the United States and brought pursuant to Title 42, United States Code, Section 1983. The Amended Complaint at bar (D.N. 72) seeks declaratory and injunctive relief in Counts I and II and compensatory and punitive damages in Count III plus attorneys' fees and costs. In essence, the three counts allege that a state-wide policy promulgated by the Florida Department of Corrections denies First Amendment religious freedoms to incarcerated black Hebrew Israelites. Hebrew Israelites consider themselves members of the Jewish faith. They study a particular version of black history in the United States, which history is derived from portions of the Old and New Testaments of the Bible as well as additional interpretative reading material and historical documents. The Amended Complaint states that prison authorities have refused to permit inmates access to certain of this religious literature mailed from the Hebrew Israelites' religious headquarters and main church, the Temple of Love. These reading materials have been mailed to inmates at Florida's correctional facilities, intercepted by prison authorities, and returned to the Temple of Love on the basis that they are not basically religious in nature and are a danger to the security of the institutions. Additionally, it is alleged that Hebrew Israelites incarcerated at the various state correctional facilities are forbidden to worship and conduct religious services in accordance with their faith.

Plaintiff ROBERT LAWSON is the initial plaintiff who instituted the Cause at bar. He is a professed, practicing Hebrew Israelite who, at the time the instant lawsuit was filed, was confined at the Hendry Correctional Institution. He has since been released and seeks only monetary damages under Count III. Plaintiff LAWSON and Count III are not subject to the class certification herein ordered. Rather, the instant ruling certifying the Cause as a Class Action applies only to those portions of the Amended Complaint which seek declaratory and injunctive relief, namely Counts I and II. Those two counts are brought by Plaintiff LAWRENCE JONES. He was recently joined in the suit (Order entered October 9, 1985, D.N. 118), and is a Hebrew Israelite incarcerated at Dade Correctional Institution. Because he will not be eligible for parole until 1991, his claim for injunctive relief, unlike LAWSON's, will not become moot prior to its resolution.

Plaintiff LAWRENCE JONES seeks to represent a class of inmates throughout the Florida prison system, pursuant to Fed. R.Civ.P. 23(b)(2) and Local Rule 9. Rule 23(b)(2) permits a class action to be certified when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with re-

spect to the class as a whole." Under Rule 23(b)(2), Plaintiff is required to demonstrate the fulfillment of the prerequisites enumerated in Fed.R.Civ.P. 23(a). That subsection provides:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff has demonstrated the existence of each of these four prerequisites under the facts of the instant case.[1]

1. *Numerosity.* Rule 23(a) requires that the proposed class members be so numerous as to make their joinder impracticable. The first step in determining whether the numerosity prerequisite is met requires that "some evidence or reasonable estimate of the number of purported class members" be adduced. *Zeidman v. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir. Unit "A" 1981). In the instant case, there is a discrepancy in the parties' estimates of the likely number of class members. In the underlying papers, Plaintiff fixed the number at seventy-five (75) (D.N. 108 at p. 3), while Defendants stated that the maximum number of Hebrew Israelites incarcerated with the Florida Department of Corrections totalled thir-

ty-four (34) (D.N. 105 at p. 4). At the hearing held December 9, 1985, Defendants increased their estimate to fifty-nine (59) (Defendants' Exhibit 1—Affidavit of Susan Dumestre). Despite Plaintiff's subsequently filed affidavit to the contrary (Affidavit of Peter Siegel filed December 10, 1985), the Court finds the Defendants' latest estimate to be the most reliable number proffered by any of the parties. Still the figure of 59 represents the absolute minimum number of persons who qualify as members of the class.

It is important to note that the Court accepts this estimate of 59 class members as one which considers only those inmates at Florida's various correctional facilities who are *professed* followers of the Hebrew Israelite faith. The estimate of 59 professed Hebrew Israelites ignores three other categories of potential class members whose numbers cannot be estimated due to the cryptic and speculative nature of the categories.[2] To begin with, the estimate does not account for "closet" followers, those inmates who have not openly declared their religious affiliation with Hebrew Israelites and/or the Temple of Love because they fear adverse reprisals from prison authorities. Plaintiffs ROBERT LAWSON and LAWRENCE JONES each testified at the evidentiary hearing of December 9, 1985, that they personally knew of inmates who were such "closet" Hebrew Israelites. According to Plaintiff LAWSON, when he was incarcerated at Hendry Correctional Institution, inmates, like him-

---

**1.** At this juncture, it is important to stress that the decision to certify a class action is one which is best "left to the discretion of the district court." *Zeidman v. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir. Unit "A" 1981). The Fifth Circuit Court of Appeals explained the rationale behind according wide latitude and great deference to the district courts in matters of class certification, thusly:

Because the certification of a class action has such a great effect on the district court's control of litigation before it, and because certification involves substantial fact questions, we will not reverse a district court's decision on class certification absent an abuse of discretion.

651 F.2d at 1038–1039.

Moreover, with respect to the standard this Court should employ in rendering its factual findings and determining whether or not Plaintiff has met his burden of proof, the Fifth Circuit decision of *Jones v. Diamond,* 519 F.2d 1090 (5th Cir.1975), is instructive. That case held that in class actions, particularly in the civil rights field, the general rules on burden of proof must not be applied rigidly or blindly.

**2.** Notwithstanding the Court's analysis that the class at bar includes three possible subcategories, the Court does not deem it necessary at this time to certify a class with separate subclasses for these three subcategories.

self, who openly professed to be Hebrew Israelites were branded as "troublemakers" by prison authorities. Consequently, according to LAWSON, many followers of the faith were reluctant to make known their religious affiliations with the Temple of Love. This conclusion is buttressed by the Affidavit of inmate James Evans (D.N. 111), which was filed by Plaintiff prior to the evidentiary hearing. James Evans, who is in isolated confinement at Florida State Prison, claims he personally knows that the number of Hebrew Israelite inmates is far greater than can be known by the prison system because inmates do not openly acknowledge their faith. He further states that inmates are given disciplinary reports and solitary confinement for practicing their religion.

The second category of potential class members which the estimate of 59 does not consider contains those inmates who would like to learn about and participate in the Hebrew Israelite religion. Those inmates warrant inclusion in the instant lawsuit because the alleged restrictions on Hebrew Israelite reading material, discussions, and religious services necessarily affects their access to information about the religion. Finally, in addition to the uncounted "closet" followers and those inmates who are interested in learning about the religion, there remains yet another category of inmates whose numbers are unascertainable, namely, those Hebrew Israelites who are not now, but *will be* in the future, incarcerated in the Florida Corrections system. Defendants' estimate of 59 class members then, is considered to be an absolute minimum number of class members with no allowances for (1) "closet" followers of the faith, (2) those who would like to learn about the faith, and (3) future inmates who either belong or are interested in the faith.

After an estimated number of class members is ascertained, other factors which may be relevant to the numerosity question should be examined. They include:

the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. 651 F.2d at 1038.

These factors all address the main inquiry of impracticability of joinder under the Rule 23(a) numerosity requirement. Geographically, the class is dispersed throughout the State of Florida's various correctional facilities, which at the present houses over 25,000 inmates in 34 individual institutions and seven road prisons (Defendants' Exhibit 1). The Defendants maintain that although the dispersion is statewide, its containment within the state's correctional facilities enables joinder of individual plaintiffs without difficulty, thereby obviating the need for a class action. Although such geographical dispersion, in and of itself, may not absolutely preclude joinder, the second factor of identification does and certification of the instant Cause as a class action is warranted. The class is not limited to those professed Hebrew Israelites who are presently incarcerated within the state system. Perhaps, if it were, there would be no difficulty in identifying the class members. However, due to the inclusion of the other three classes of inmates hereinabove described—(1) the "closet" Hebrew Israelites, (2) the inmates who are interested in learning about the religion, and (3) the future inmates who either belong or are interested in the faith—there is a significant impediment to identification of class members.

This point was emphasized in *Jack v. American Linen Supply Company*, 498 F.2d 122 (5th Cir.1974). In that case, the Court held that it was error for a district court to dismiss a class action wherein the alleged class included unnamed, unknown future black employees who would be affected by an employer's alleged discriminatory policy. The Court stated that the inclusion of such future employees rendered their joinder impracticable and thus satisfied the numerosity prerequisite for a class action. Interestingly enough, the district court determined that the 51 known present employees who were properly includable in the class were not so numerous

as to render their joinder impracticable. The Fifth Circuit reversed the district court's conclusion and stated:

> (I)f the figures in the report of the Equal Employment Opportunity Commission are accurate, there are fifty-one blacks presently employed by American Linen. The alleged class also includes unnamed, unknown future black employees who will be affected by American Linen's discriminatory policies, and joinder of unknown individuals is certainly impracticable. Thus the requirements of Rule 23(a)(1) would appear to be met here.

498 F.2d at 124. *Accord: Miller v. Carson,* 563 F.2d 741, 743 (5th Cir.1977) (Future inmates were included properly in a class action involving prison conditions.)

Besides geographical dispersion and the ease *vel non* with which class members can be identified, the Court should consider the nature of the action and the size of each plaintiff's claim when determining whether or not the numerosity requirement is met. In the instant case, Counts I and II seek declaratory and injunctive relief with respect to a policy affecting prisoners and promulgated by Florida's Department of Corrections. Monetary damages are not claimed in that portion of the action which Plaintiff seeks to have certified, therefore, each class member would seek only equitable relief and differing claim sizes would not factor into the analysis. Courts have uniformly permitted class actions to be maintained when inmates seek declaratory and injunctive relief regarding prison conditions. *E.g., Miller v. Carson, supra; Bridges, et al. v. Fred Crawford, et al.,* Case No. 74–994–Hoeveler (S.D.Fla.); *See, Adderly v. Wainwright,* 46 F.R.D. 97 (M.D.Fla.1968).

■ In conclusion, Plaintiff has demonstrated that the proposed class at bar is one which fulfills the prerequisite of numerosity insofar as joinder of its members is impracticable. The inclusion of inmates who are afraid to declare their adherence to the Hebrew Israelite faith as well as those who are merely interested in learning about the religion plus future inmates mandates that the instant action be certified. While geographical dispersion may not present insurmountable obstacles to joinder, the peculiarly speculative nature of the class membership makes identification, and hence, joinder, impossible. Finally, the nature of the action plus the equitable relief sought makes the instant Cause particularly amenable to certification as a class action.

■ *2. Common Questions of Law or Fact.* The second prerequisite under Rule 23(a) which Plaintiff must establish is the presence of common questions of law or fact. There are, in the instant case, common questions of both law and fact. To begin with, Defendants have conceded that meaningful and significant portions of the Temple of Love literature is inadmissible in Florida Department of Corrections facilities. (Defendants' Motion for Summary Judgment, D.N. 90). This common fact of denying Hebrew Israelite inmates access to certain reading material prepared by the Temple of Love is therefore established as to all members of the proposed class.

Likewise, the case presents a question of law common to all members of the proposed class, namely, whether the inmates' First Amendment rights have been violated as a result of Defendants' restrictions on their ability to participate in the Hebrew Israelite religion. Plaintiff challenges a *system-wide* policy of Defendants which is generally applicable to all Hebrew Israelites housed in the State's correctional system. The questions of law that will resolve the matter are common to all such persons. "A broad based allegation of civil rights violations typically presents common questions of law and fact." *Pabon v. McIntosh,* 546 F.Supp. 1328 (E.D.Pa.1982).

Defendants hardly dispute the existence of common questions of law and fact in the case at bar. They emphatically caution however, that the difference in the security requirements for the various correctional institutions may, at the very least, warrant "class subcategories" which differentiate between the maximum security institutions where racial tensions tend to run higher

and the minimum security institutions where the need for restricting Hebrew Israelite literature and activities is not as great. Without reaching the merits of this proposal for subcategories, the Court merely notes the suggestion. At this stage in the proceedings, the Court does not see the need for creating subcategories of the class certified herein. For the purposes of this Order, Plaintiff has established fulfillment of the second Rule 23(a) prerequisite by demonstrating that common questions of law and fact do exist.

■ 3. **Typicality.** The third prerequisite mandates that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). Typicality is established when there is a sufficient nexus between the class representative's claims and the common question of law or fact which unites the class. A sufficient nexus is established if the claims of the class and the class representative arise from the same policy and are based on the same legal theory. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985).

According to the recent Eleventh Circuit decision of *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985), the typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." In *Appleyard*, the Court vacated a district court's denial of a motion for class certification and its subsequent dismissal of the action. In that case, the proposed class consisted of "all persons in the State of Alabama who have applied for Medicaid care and treatment in nursing homes who are financially eligible for such Medicaid who have been denied Medicaid under the Alabama level of care admission criteria." 754 F.2d at 956. The district court denied certification of the class on the basis of lack of typicality, stating that "(t)he vast factual differences surrounding the medical conditions of each of the named Plain-

tiffs prevent these Plaintiffs from having claims or defenses which would be typical of those of all members of the putative class." 754 F.2d at 958. The Eleventh Circuit held that the district court misapplied the typicality requirement and, thereby abused its discretion in refusing to certify the class. The factual distinctions among the proposed class members' claims were deemed of little relevance. The Court stated:

It does not appear that the factual differences surrounding the medical conditions of the various plaintiffs would preclude the district court from determining whether the plaintiffs are entitled to the relief they seek. The similarity of the legal theories shared by the plaintiffs and the class at large is so strong as to override whatever factual differences might exist and dictate a determination that the named plaintiffs' claims are typical of those of the members of the putative class.

754 F.2d at 958.

■ The factual distinctions of the various inmates' claims appear to be of even less significance than the ones present in *Appleyard*. Although the inmates' duration of confinement, type and place of incarceration, and conviction of religious belief may vary, the legal theories, the alleged statewide unconstitutional policy under attack, and the requested legal relief are all identical. In short, Plaintiff JONES' claim appears to embody the essential, if not identical, characteristics of the class at large.

Plaintiff LAWRENCE JONES seeks declaratory and injunctive relief so that he may have complete access to all Hebrew Israelite reading material and so that he may openly discuss and practice the tenets of his religion. Obviously, all of the proposed class members seek the same declaratory and injunctive relief. Moreover, all claims stem from Defendants' policy of restricting inmates' access to the Hebrew Israelite religion and all claims would necessarily entail allegations of infringement on the First Amendment religious free-

doms. Accordingly, the Court finds that there is a sufficient nexus between Plaintiff LAWRENCE JONES and those Florida inmates who qualify under the proposed class membership description to satisfy the third Rule 23(a) prerequisite of typicality.

■ 4. *Fair and Adequate Protection of the Class.* Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." Two basic criteria determine the adequacy of a named plaintiff's representation of a proposed class: (1) the representatives must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel. *Gonzales v. Cassidy,* 474 F.2d 67, 72 (5th Cir.1973). Both concerns have been met and Plaintiff has accordingly fulfilled his burden of proof with respect to the fourth prerequisite under Rule 23(a)(4).

■ As the foregoing discussion of the commonality and typicality requirements demonstrates, Plaintiff LAWRENCE JONES has common interests with the proposed class and a desire to ameliorate what he perceives to be the unconstitutional denial of religious materials and services in correctional facilities operated by the State of Florida. Further, Defendants have not suggested, and the Court cannot discern, any interests that Plaintiff JONES might have which could conceivably be construed as antagonistic or adverse to those of other class members. *See Gonzales, supra* at 73, n. 10.

With respect to the second facet of the fourth prerequisite, Plaintiff is represented by counsel from the Florida Justice Institute, Inc., a non-profit, public interest law organization. In determining whether counsel is qualified to represent the class, the cases stress that there be no conflict of interests between counsel and class members, particularly where contingency fees may be present. *Shroder v. Suburban*

*Coastal Corp.,* 729 F.2d 1371, 1374–1376 (11th Cir.1984). There is no possible conflict present in the instant case because there is no relationship between any of the class members and counsel. Further any attorney's fees awarded to Plaintiff's counsel, if awardable, would be directly payable by the State pursuant to Title 42, United States Code, Section 1988, rather than from a fund created for class relief.

In the instant case, this Court has no doubt that Plaintiff is represented by competent, diligent counsel. The Court file reflects that Plaintiff and his counsel will zealously pursue the interests of the class. Moreover, as the Eleventh Circuit stated in *Shroder, supra,* at page 1376:

> Throughout our legal history, a shortage has existed of plaintiffs (counsel) willing and available to file civil rights class actions. The courts are thus, quite rightly, hesitant to deny class certification in civil rights cases.

For all these reasons, the Court finds that Plaintiff LAWRENCE JONES and his qualified counsel, the Florida Justice Institute, will fairly and adequately represent and protect the class herein certified.

Once it has been established that all of the Rule 23(a) prerequisites have been met, the Court must next look to the applicable subsection under Rule 23(b) to ascertain the type of class action which is to be maintained. Plaintiff urges that the instant Cause is appropriate for certification under Rule 23(b)(2). As stated earlier, a Rule 23(b)(2) class is appropriate when:

> The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The record of the instant Cause and the foregoing discussion demonstrate that the proposed plaintiff class fulfills the definition of a Rule 23(b)(2) class.[3]

---

3. This case may likewise satisfy the requirements under Rule 23(b)(1)(A) insofar as multiple lawsuits alleging unconstitutional regula-

tions, conditions, policies, or practices could result in inconsistent or varying adjudications establishing incompatible standards of conduct

The Amended Complaint alleges that Defendants have refused to act on grounds generally applicable to a class of all Hebrew Israelites in Florida's prisons insofar as all have been denied access to religious literature, the ability to worship amongst themselves, and the right to have services conducted by Elders from the Temple of Love. The term "generally applicable" as it appears in Rule 23(b)(2) has been interpreted to mean that the party opposing the class "has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity, or has established a regulatory scheme common to all class members." 7A Wright & Miller, *Federal Practice and Procedure*, § 1775 at 19–20 (1972). Rule 23(b)(2) is satisfied where there is a basic pattern of action or inaction on the part of the defendant that causes, or has the potential for causing, all members to be subjected to the challenged practices and conditions. See *Conover v. Montemuro*, 477 F.2d 1073 (3d Cir.1972) *reinstated in relevant part*, 477 F.2d 1093 (3d Cir. 1973). The Court finds that the allegations in the Amended Complaint exemplify such a basic pattern of action.

Without rendering a determination as to whether or not the challenged pattern of action is validated by the prisons' need to avoid incendiary circumstances likely to cause riots, this Court does note that the State certainly has a proper interest in maintaining the security of its correctional institutions. At the same time, the Court is extremely mindful of the very meaningful values attached to the First Amendment religious freedoms which are alleged to have been infringed.

The class action is the most appropriate means for resolving these conflicting interests, especially when the alleged system-wide violations of prisoner First Amendment rights hang in the balance. *Pabon v. McIntosh*, 546 F.Supp. 1328 (E.D.Pa.1982); *Monroe v. Bombard*, 422 F.Supp. 211 (S.D. N.Y.1976). Defendants insist that there is no need to certify the instant case as a class action despite its constitutional ramifications because any ruling rendered herein would automatically accrue and apply to all Hebrew Israelites incarcerated at the State's correctional facilities. This argument is negated by the testimony of Defendants' own witness, William E. Counselman. Mr. Counselman is the State of Florida's Correctional Chaplaincy Services Administrator. On cross examination, he was asked about somewhat similar cases involving Zion Coptic inmates who desired to grow their hair and wear beards due to their religious beliefs. Mr. Counselman stated that without exception, the Zion Coptic inmates were required to procure individual Court orders allowing them to grow their hair and wear beards. The fact that one Zion Coptic inmate might procure such a Court order did not in any favorable way influence the Department of Corrections. Instead, the State's policy was to require subsequent individual Court orders. This policy would indicate that failing the certification of the proposed class at bar, each individual Hebrew Israelite who desired to receive religious material from the Temple of Love would be forced to prosecute a separate action and obtain a Court order. This is directly contrary to Defendants' automatic accrual of benefits argument. No testimony was presented by the Defendants which would suggest that the policy toward Hebrew Israelites would be differ-

for Defendant WAINWRIGHT (if, for example, two courts would find underlying liability, but impose mutually inconsistent remedial schemes.) *See, e.g., Rothgeb v. Statts,* 56 F.R.D. 559, 564–565 (S.D.Ohio 1972). With respect to this point, the Court notes that there are a plethora of cases similar to the one at bar filed throughout federal courts sitting in Florida. At the evidentiary hearing, counsel for Defendants stated that the present case is "the furtherest along", but that there are similar cases pending in the Middle and Northern Districts of Florida. The Court is also advised that there may be some cases involving Hebrew Israelite inmates pending in the Southern District of Florida. In addition then, to all of the reasons advanced herein pursuant to certification under Rule 23(b)(2), judicial economy and the Rule 23(b)(1)(A) concerns of expediency and consistency in adjudicating similar, if not identical, claims all point to certification of the proposed class.

ent from the State's policy toward incarcerated Zion Coptics. In fact, it appears from the testimony adduced at the evidentiary hearing that the State will not agree to be bound by one judgment.[4] Therefore, the Court discounts Defendants' automatic accrual of benefits argument and holds that the instant case which presents claims of constitutional magnitude involving Florida's policy toward its prisoners is particularly appropriate for class certification.

The Court finds that Plaintiff has met his burden of proof in every respect. He has satisfied all of the prerequisites under Rule 23(a) and has demonstrated that the Rule 23(b)(2) definition is particularly applicable to the allegations at bar. It is for these reasons, that the Court certifies the proposed class defined above as a class action under Fed.R.Civ.P. 23(b)(2).

Accordingly, Counsel for all parties are ORDERED AND DIRECTED to consult and agree upon the least intrusive and most cost efficient means of effecting notice to the class herein certified. Subsequent to such consultation and agreement, but within thirty (30) days herefrom, the parties shall report the results of their meeting to the Court by filing a joint paper which details the recommended method of notice to be employed. Subject to the Court's review of the same, the Cause will proceed as a class action and the parties will, upon further instruction from the Court, proceed to effect notice as agreed upon and approved by the Court.

---

**4.** Were the State willing to agree to and abide by a decision to be bound by one judgment, then the Court might hear the matter further, provided, of course, that the Court believed such a stipulation would warrant reconsideration of the class certification ordered herein.