

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-15-1994

# Baby Neal v. Casey

Precedential or Non-Precedential:

Docket 94-1381

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Baby Neal v. Casey" (1994). *1994 Decisions.* Paper 221.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/221

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

BABY NEAL, for and by his next friend, NANCY KANTER;
KAREEM AND KENT H, for and by their next friend,
JOHN PEIRCE; WILLIAM AND JOSEPH H, for and by
their next friend, FATHER, ROBERTO MALDONADO;
MARCELLA B, for and by her next friend, FRANK
CERVONE; SHERRY G, for and by her next friend,
JOAN ATLAS; JOHN, JEAN, JACOB, AND JEFFREY W,
for and by their next friend, WILLIAM SWEENEY;
ALICIA P, for and by her next friend, SARA
NERKEN; MANUEL I, for and by his next friend,
FRANK CERVONE; TAMARA AND CARL I, for and   by
their next friend, FRANK CERVONE; JANE L, for
and by her next friend, ANNA SCHMIDT

JAMIE B; IVY V; AMELIA V; TARA M; EVAN M; ELLIE C;
JOHN B; CHUCK L; LARRY P; SHERIS C; KYLE S;
TODD MCL; JAY I; MAX C;

Plaintiffs-Intervenors

v.

ROBERT P. CASEY, in his official capacity as
Governor of COMMONWEALTH OF PENNSYLVANIA; KAREN
F. SNIDER,* in her official capacity as Secretary
of the Department of Public Welfare for the
Commonwealth of Pennsylvania; W. WILSON GOODE,
in his official capacity as Mayor of the City of
Philadelphia; JOAN M. REEVES, in her official
capacity as Commissioner of the Department of Human
Services of the City of Philadelphia; MAXINE TUCKER,
in her official capacity as Interim Deputy
Commissioner of the Children and Youth Division of the
Philadelphia Department of Human Services; EDWARD
J. BLAKE, in his official capacity as President Judge
of the Philadelphia Court of Common Pleas

*[substituted pursuant to FRAP 43(c)]

Baby Neal, by and through his next friend, Nancy
Kanter; Marcella B, by and through her next
friend, Frank Cervone; Sherry G, by and through

her next friend, Joan Atlas; John, Jean, Jacob, and Jeffrey W, by and through their next friend, William Sweeney; Alicia P, by and through her next friend, Sara Nerken; Tamara, Carl, and Manuel I, by and through their next friend, Frank Cervone; Jane L, by and through her next friend, Anna Schmidt; Jamie B, by and through his next friend, Claire Rosenstein; Ivy, Amelia, and Jay V, by and through their next friend, Susan Bergin; Tara M, by and through her next friend, Nancy Kanter; Evan M and Ellie C, by and through their next friend, Najma Davis; John B, by and through his next friend, Anita Wirzberger; Chuck L, by and through his next friend, Sara Nerken; Max C, by and through his next friend, Nancy Kanter; Larry P, by and through his next friend, Nancy Kanter; Sheris C, by and through his next friend, William W. Norvell, III; Kyle S, by and through his next friend, Sara Nerken; and Todd McL, by and through his next friend, Nancy Kanter,

Appellants

---

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 90-cv-02343)

---

Argued: September 22, 1994

Before: BECKER, COWEN, and GARTH, Circuit Judges.

(Filed  December 15, 1994)

ROBIN   L.   DALHBERG,   Esquire
(ARGUED)

MARCIA ROBINSON LOWRY, Esquire
American Civil Liberties Union
Children's Rights Project
132 West 43rd Street
New York, New York   10036

LAWRENCE J. FOX, Esquire
MARY E. KOHART, Esquire
E. GRAHAM ROBB, Esquire
PAUL H. SAINT-ANTOINE, Esquire
Drinker Biddle & Reath
Philadelphia National Bank Bldg.

1345 Chestnut Street
Philadelphia, PA  19107-3496

STEFAN PRESSER, Esquire
American Civil Liberties Union
     of Pennsylvania
125 South Ninth Street, Suite 701
Philadelphia, PA  19107

Attorneys for Appellants


DANA B. KLINGES, Esquire (ARGUED)
JEROME J. SHESTACK, Esquire
MICHELE K. CABOT, Esquire
Wolf, Block, Schorr & Solis-Cohen
S.E. Corner 15th & Chestnut Sts.
Packard Building, 12th Floor
Philadelphia, PA  19102

JOHN A. KANE, Esquire
Chief Counsel
DORIS M. LEISCH, Esquire
Assistant Counsel
Department of Public Welfare
309 Health & Welfare Building
Harrisburg, PA  17120

Attorneys for Appellees
Robert P. Casey and Karen Snider


MICHAEL F. EICHERT, Esquire
Office of the City Solicitor
1600 Arch Street, 8th Floor
Philadelphia, PA  19102

Attorney for Appellees
W. Wilson Goode, Joan M. Reeves,
and Maxine Tucker


A. TAYLOR WILLIAMS, Esquire
Supreme Court of Pennsylvania
Administrative Office of
     Pennsylvania Courts
1515 Market Street, Suite 1414
Philadelphia, PA  19102

Attorney for Appellee
Edward J. Blake

MARTHA MATTHEWS, Esquire
National Center for Youth Law
114 Sansome Street, Suite 900
San Francisco, CA  94104-3820

Attorney for Amicus Curiae
National Center for Youth Law


ROBERT G. SCHWARTZ, Esquire
JACQUELINE L. DUBY, Esquire
Juvenile Law Center
801 Arch Street, Suite 610
Philadelphia, PA  19107

Attorneys for Amici Curae
Juvenile Law Center
Philadelphia     Citizens     for
Children

and Youth

_____

**OPINION OF THE COURT**
_____

BECKER, Circuit Judge.

This appeal from orders of the district court for the Eastern District of Pennsylvania requires that we decide whether the court abused its discretion in denying class certification pursuant to FED. R. CIV. P. 23(b)(2) to a putative class of children in the legal care and custody of Philadelphia's Department of Human Services ("DHS"), who sought declatory and injunctive relief against the officials responsible for operation of the child welfare system.  Plaintiffs allege that systemic deficiencies prevent DHS from providing a variety of child welfare services legally mandated by the United States Constitution and by federal and state law.  The district court held that the plaintiffs could not meet the commonality and

typicality requirements of Rule 23, essentially because each of the plaintiffs' claims arose out of individual (and tragic) circumstances and hence they could not claim a single common injury and be appropriately entitled to class relief pursuant to RULE 23(b)(2). We reverse.

## I. FACTS AND PROCEDURAL HISTORY

This suit was brought on behalf of sixteen children who had been placed in DHS's care by orders of the Family Court Division of the Philadelphia County Court of Common Pleas ("the Court"). Defendants are the Governor of Pennsylvania, the Secretary of Pennsylvania's Department of Public Welfare ("DPW"), the Mayor of Philadelphia, the Commissioner and Deputy Commissioner of DHS, and the President Judge of the Court. The city defendants are responsible for the operation and administration of DHS. The Commonwealth defendants are responsible for ensuring that DHS provides legally mandated child welfare services to eligible children and families. The Judicial defendant is responsible for the allocation of judicial resources for the Family Court.

It is a matter of common knowledge (and it is not disputed here) that in recent years the system run by DHS and overseen by DPW has repeatedly failed to fulfill its mandates, and unfortunately has often jeopardized the welfare of the children in its care. Plagued by severe and widespread deficiencies in staff and revenues, the system has often

demonstrated a lack of ability to provide abused and neglected children with the necessary welfare services.

The DHS acknowledged many of these deficiencies in its Three Year Plan 1991-1992 (A486-A492). The Commonwealth defendants have also acknowledged these deficiencies: three times since April 1992, DPW denied a full operating license to the DHS. At those times, DPW announced that DHS had failed (1) to satisfy legal mandates for child protective services investigations; (2) to adhere to the caseload maximum of 30 cases per caseworker; (3) to assign to a substantial number of foster children a caseworker to monitor foster care placement and to ensure that the children received necessary and appropriate services; (4) to ensure that foster parents received the training necessary to permit them to care for foster children; and (5) to provide any child whose records were reviewed with an adequate case plan. (A277-A332; A333-A338; A389-A445)

The original complaint, filed on April 4, 1990, sought both declaratory and injunctive relief, and alleged that systemic deficiencies prevent DHS from providing the following legally mandated child welfare services: protective service investigations as required by the United States Constitution, the Child Abuse Prevention and Treatment Act,[1] and state law[2]; monitoring and supervision as required by the Constitution and

---

[1] 42 U.S.C. § 5106a(b) (West Supp. 1994).

[2] 23 Pa. CON. STAT. ANN. §§6301-84 (1991), 55 Pa. Code §§3490.51-.73 (1994).

state law[3]; safe and secure foster care placements as required by the Constitution, the Adoption Assistance Act,[4] and state law[5]; written case plans as required by the Constitution, the Adoption Assistance Act,[6] and state law[7]; necessary medical, psychiatric, psychological, and educational services as required by the Constitution, and state law[8]; the planning and steps required to return children to their families or to find them alternative permanent placements as required by the Constitution, the Adoption Assistance Act,[9] and state law[10]; and periodic judicial reviews as required by the Constitution, the Adoption Assistance Act,[11] and state law[12].

In factual terms, plaintiffs allege that the system has the following deficiencies: an insufficient number of trained caseworkers; an insufficient number of medical, psychiatric, psychological, and educational service providers; an insufficient

---

[3] 55 Pa. Code § 3490.61 (1994).

[4] 42 U.S.C. §671(a)(10) (West Supp. 1994).

[5] 55 Pa. Code § 3130.67 (1994).

[6] 42 U.S.C. §§627(a)(2)(B), 675 (West 1991).

[7] 55 Pa. Code §§ 3130.61, 3130.63, 3130.66-67, 3130.73, 3490.59, 3810.35 (1994).

[8] 55 Pa. Code §§3130.12(c), 3130.34-35, 3130.73, 3490.60, 3700.51, 3810.51 (1994).

[9] 42 U.S.C. §627(a)(2)(C) (West 1991).

[10] 55 Pa. Code §§3130.36-37 (1994).

[11] 42 U.S.C. §§627(a)(2)(B), 675 (West 1991).

[12] 55 Pa. Code §§3130.71, 3130.72 (1994).

number of trained foster parents; an insufficient number of placements for children who need environments that are more structured than foster homes; an insufficient number of potential adoptive parents; and a host of policies and procedures that are inefficient and deficient as measured against the standards of national organizations incorporated under federal law. The complaint portrays the impact of these deficiencies through accounts of the lives and conditions of the named plaintiffs. The stories are quite pathetic.

Doctrinally, these allegations comprise four separate claims for declaratory and injunctive relief. The first cause of action involves the alleged violations of rights conferred by the Adoption Assistance and Child Welfare Act of 1980, including the right to reasonable efforts to keep the children in their home or to enable them to return home; the right to timely written case plans; the right to placement in foster homes that meet nationally recommended standards; the right to appropriate services; the right to placement in the least restrictive, most family-like setting; the right to proper care while in custody; the right to a plan and to services that will assure permanent placement; the right to dispositional hearings within eighteen months of entering custody and periodically thereafter; and the right to receive services in a child welfare system with an adequate information system.

The second cause of action lies in alleged violations of the First, Ninth and Fourteenth Amendments to the United States Constitution. Specifically, plaintiffs claim that these

amendments confer the right not to be deprived of a family relationship; the right not to be harmed while in state custody; the right to placement in the least restrictive, most appropriate placement; the right to medical and psychiatric treatment; the right to care consistent with competent professional judgment; and the right not to be deprived of liberty or property interests without due process of law.

The third cause of action alleges violations of rights conferred on the plaintiffs by the Child Abuse Prevention and Treatment Act, including the right to a prompt and appropriate investigation of reports of abuse or neglect; the right to protection from those who endanger their health and welfare; and the right to procedures, personnel, programs, and facilities that are necessary to deal effectively with child abuse and neglect. As with the first cause of action, defendants argue that this Act does not create any private rights of action.

The fourth cause of action provides an alternative basis in state law for some of the claims alleged under the three federal causes of action. These claims include the right to protection from abuse; the right to preventive rehabilitative services; the right to appropriate and timely case records and plans; the right to have every effort made to enable the children to remain in their homes or be returned to their homes; the right to appropriate services to assure proper permanent placement; and the right to adoption services.

Simultaneously with the filing of the complaint, the plaintiffs sought certification of a class consisting of "all

children in Philadelphia who have been abused or neglected and are or should be known to the Philadelphia Department of Human Services." (Pls. Motion 4/4/90 ¶2). The Commonwealth defendants moved to dismiss the complaint on the grounds that the plaintiffs had no valid claim for relief under any of the relevant federal laws. The district court denied the defendants' motion, but it stayed the class certification motion during its consideration of this motion to dismiss. In response to defendants' asserted inability to complete the discovery necessary to oppose the certification, the district court stayed resolution of the class certification motion three additional times. (Order 11/19/90; Order 1/30/91; Order 5/6/91). During this period, the plaintiffs attempted to commence system-wide discovery. They now allege that the defendants never produced "much of the requested discovery."

The district court denied the class certification motion in an order dated January 6, 1992, based on the finding that the putative class had failed to satisfy the commonality and typicality requirements of Rule 23(a) and had also failed to satisfy Rule 23(b).[13] The court based these determinations on its view that each of the plaintiffs had his or her own individual circumstances and needs, and that the class thus could not complain about a single, common injury. The plaintiffs moved

---

[13] The court also based its decision on the failure to satisfy the adequate representation requirement, but it subsequently approved the substitution of new next friends on March 20, 1992, and the adequacy of representation issue is no longer pressed.

for reconsideration or, in the alternative, for certification of subclasses. While this motion was pending, fourteen children intervened as plaintiffs, seeking relief for themselves and proffering a demonstration that children in DHS's custody and care continued to be harmed by DHS's failure to provide legally mandated child welfare services. The court subsequently denied the motion for reconsideration and for certification of subclasses.

The defendants then moved for summary judgment, repeating the argument made in the motion to dismiss that the plaintiffs had no private rights of action under the federal laws alleged, and arguing that the plaintiffs' claims had become moot. On August 24, 1992, the plaintiffs again moved for certification of subclasses. The district court stayed consideration of that motion pending the resolution of the summary judgment motion. In an order dated April 12, 1993, the court partially granted the defendants' motion for summary judgment, rejecting the plaintiffs' claims as to the existence of the private rights of action under the Child Abuse Prevention and Treatment Act and the Adoption Assistance and Child Welfare Act. The court denied the defendants' motion insofar as it asserted the mootness of all but twenty-three of the twenty-six plaintiffs' claims.

On May 10, 1993, the plaintiffs renewed their motion for subclass certification. On October 13, 1993, in an order denying certification the court held that the subclasses were not properly defined. The plaintiffs then moved for reconsideration, proposing new subclass definitions intended to address the

court's concerns. The court denied this motion without comment, forbade plaintiffs from making any other class certification motions, and scheduled the case for trial. (Order, 12/6/93).

By this time, nearly four years after the commencement of the litigation, almost all of the individual service needs of the plaintiff children had been met or otherwise resolved. The parties then settled the plaintiffs' remaining claims based on individual service needs and entered into a stipulation of entry of judgment (Stip., 2/28/94), preserving the plaintiffs' right to appeal the denial of class certification and the grant of partial summary judgment as to the existence of private rights of action under the federal statutes. This appeal followed.[14]

---

[14] We raised sua sponte the question whether we had appellate jurisdiction to consider the case since the named plaintiffs' individual claims had been mooted after the denial of class certification. Both parties submitted briefs in favor of the exercise of appellate jurisdiction. We conclude, for the reasons set out in this footnote, that we have jurisdiction to consider the class certification issue, but not the summary judgment issues.

Because the combination of the summary judgment order (to which the class was not a party) and the stipulation left nothing in the district court, the orders of the district court are now final and thus subject to review. 28 U.S.C. § 1291. Notwithstanding the fact that some of the named plaintiffs' claims have become moot since the original denial of class certification, this case does present live issues. United States Parole Com. v. Geraghty, 445 U.S. 388, 100 S. Ct. 1202 (1980), made clear that the expiration of the named plaintiff's claims after the denial of class certification does not moot the action brought on behalf of the class. See also Eisenberg v. Gagnon, 766 F.2d 770, 784 (3d Cir. 1985). Thus, the district court's orders were final and the issues presented are not moot.

This court, however, only has jurisdiction to review the certification decision, in contrast to the summary judgment order issued on the existence of the private rights of action under the Adoption Assistance and Child Welfare Act, the Child Abuse Prevention and Treatment Act, state law, and the U.S.

## II.  THE LEGAL REQUISITES FOR CLASS CERTIFICATION

### A.  Introduction

To obtain class action certification, plaintiffs must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met.  Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239 (3d Cir.), cert. denied, 421 U.S. 1011 (1975).  Rule 23(a) provides that

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

The requirements of Rule 23(a) are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances.  While numerosity addresses the first of these concerns, i.e.,

---

Constitution.  In affirming the Court of Appeals on the jurisdictional ground, the Geraghty Court emphasized,

> It would be inappropriate for this Court to reach the merits of this controversy in the present posture of the case. . . . Furthermore, although the Court of Appeals commented upon the merits for the sole purpose of avoiding waste of judicial resources, it did not reach a final conclusion on the validity of the guidelines.

445 U.S. at 408, 100 S. Ct. at 1215.

necessity, the last three requirements help determine whether the class action can be maintained in a fair and efficient manner. Class treatment makes no sense if there are no common issues; the trial court would gain nothing but logistical headaches from the combination of the cases for trial. Typicality asks whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class. Adequacy of representation assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class.

In addition to satisfying the requirements of Rule 23(a), a putative class must also comply with one of the parts of subsection (b). In this case, plaintiffs seek certification pursuant to Rule 23(b)(2) which requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b).

For the reasons explained below, we conclude that the plaintiffs satisfied all of the requirements of Rule 23, and that the district court abused its discretion in denying class certification on the grounds that plaintiffs failed to comply with subsections (a)(2) (commonality), (a)(3) (typicality), and

(b)(2) (appropriateness of class relief) of Rule 23.[15] There is, as we have noted, no dispute over numerosity ((a)(1)) or adequacy of representation ((a)(4)).

The concepts of commonality and typicality are broadly defined and tend to merge. See 7A CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1764, at 247 (1986). Both criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented. See General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 2370 n.13 (1982). Despite their similarity, however, commonality and typicality are distinct requirements under Rule 23. See Hassine v. Jeffes, 846 F.2d 169, 176 n. 4 (3d Cir. 1988) ("'[C]ommonality' like 'numerosity' evaluates the sufficiency of the class itself, and 'typicality' like 'adequacy of representation' evaluates the sufficiency of the named plaintiff . . . ."); Weiss v. York Hosp., 745 F.2d 786, 810 (3d Cir. 1984), cert. denied, 470 U.S. 1060 (1985).

We turn to a more particularized discussion of these requisites. We underscore at the outset, however, that neither of these requirements mandates that all putative class members share identical claims, see Hassine, 846 F.2d at 176-77; Weiss, 745 F.2d at 809; WRIGHT, ET AL., § 1763, at 198, and that factual

---

[15] Denial of class certification is reviewed for abuse of discretion. Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992); Winston v. Children & Youth Services, 948 F.2d 1380, 1392 (3d Cir.), cert. denied 112 S. Ct. 2303 (1992). Valenti v. Mitchell, 962 F.2d 288, 299 (3d Cir. 1992).

differences among the claims of the putative class members do not defeat certification.  See Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985) (certifying securities fraud class action despite differences in injuries); Troutman v. Cohen, 661 F. Supp. 802, 811 (E.D. Pa. 1987) (certifying subclass of 1,973 nursing home patients challenging reductions in their level of nursing care designations over typicality and commonality objections "because it is not the unique facts of the individual appeals which give rise to this action but rather the decision making process").

B.  Commonality

The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.  Weiss, 745 F.2d at 808-09; In re "Agent Orange" Prod. Liab. Lit., 818 F.2d 145, 166-67 (2d Cir. 1987).  Because the requirement may be satisfied by a single common issue, it is easily met, as at least one treatise has noted.  See H. NEWBERG & A. CONTE, 1 NEWBERG ON CLASS ACTIONS § 3.10, at 3-50 (1992).  Furthermore, class members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice.  Hassine, 846 F.2d at 177-78; cf. Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985) (finding constitutional violation in prisoners' being subject to constant threat of violence and sexual assault and rejecting contention that plaintiff must actually be assaulted before obtaining relief).

Challenges to a program's compliance with the mandates of its enabling legislation, even where plaintiff-beneficiaries are differently impacted by the violations, have satisfied the commonality requirement. See 3B JAMES W. MOORE & JOHN E. KENNEDY, MOORE'S FEDERAL PRACTICE ¶ 23.06-1, at 23-162 (1993) (citing cases). Courts appear to consider "common" such challenges based on alleged violations of statutory standards. See Liberty Alliance of the Blind v. Califano, 568 F.2d 333 (3d Cir. 1977) (certifying class of blind recipients challenging regulations for calculation of Supplemental Security Income benefits); Appleyard v. Wallace, 754 F.2d 955 (11th Cir. 1985) (certifying class challenging regulations pertaining to receipt of Medicaid benefits despite factual differences among claims). Moreover, because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions "by their very nature often present common questions satisfying Rule 23(a)(2)." 7A WRIGHT ET AL., § 1763, at 201.

To the extent that the defendants assert that commonality requirements cannot be met in this case because of the individualized circumstances of the children, their argument has been squarely rejected by the Supreme Court. In Califano v. Yamasaki, 442 U.S. 682, 99 S.Ct. 2545 (1979), plaintiffs challenged the adequacy of the procedures used to recoup overpayments under the Social Security Act. Rejecting an argument that the applicable statute only invited suits by individuals, the court explained that "class relief is consistent with the need for case-by-case adjudication," especially where

"[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue." Id. at 701, 99 S. Ct. at 2557. This is especially true where plaintiffs request declaratory and injunctive relief against a defendant engaging in a common course of conduct toward them, and there is therefore no need for individualized determinations of the propriety of injunctive relief. See 7A WRIGHT ET AL., § 1763 at 203. Indeed, (b)(2) classes have been certified in a legion of civil rights cases where commonality findings were based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct. Id. at 219.

In Hassine v. Jeffes, 846 F.2d 169 (3d Cir. 1988), plaintiffs claimed that the conditions at the Graterford prison violated their constitutional rights. Reversing the district court's denial of certification on commonality grounds, this court explained that Rule 23 did not require all plaintiffs actually to suffer the same injury; rather, the fact that the plaintiffs were subject to the injury, that they faced the immediate threat of these injuries, sufficed for Rule 23. In particular, the Hassine panel explained that the named plaintiffs could attack the inadequate mental health care provided at the prison despite the fact that none of them were in current need of those services; it was enough that they challenged the "inadequacy of the provision of any health care service, to which

they are entitled, and which they might at some time require."
Hassine, 846 F.2d at 178 n.5.

Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded. Classes can be certified for certain particularized issues, and, under well-established principles of modern case management, actions are frequently bifurcated. In Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985), we held that a securities fraud case against three separate partnerships, and hence three different general partners, met the commonality requirement. The individual damage determinations could be made, we explained, at a separate phase of the trial, but the class phase could resolve the central issue of liability for the alleged misrepresentations and omissions.

## C. Typicality

The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. 3B MOORE & KENNEDY, ¶ 23.06-02; 1 NEWBERG & CONTE, § 3.13. The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees. See Weiss, 745 F.2d at 810.

"Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" Hassine, 846 F.2d at 177 (quoting Eisenberg, 766 F.2d at 786); see also Hoxworth, 980 F.2d at 923; Appleyard, 754 F.2d at 958. Commentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims. See 1 NEWBERG & CONTE § 3.13. Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold.

"[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." Hoxworth, 980 F.2d at 923 (citing Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123, 130 (3d Cir. 1987), cert. denied, 484 U.S. 1042, 108 S.Ct. 773 (1988), and 1 NEWBERG & CONTE § 3.15). In Hoxworth, this court affirmed over typicality objections the class certification of a (b)(3) class of securities investors who had purchased or sold any of twenty-one securities during a specified period. We explained that the claims stemmed solely from the defendant's "course of conduct in failing to advise purchasers of its excessive markup policy." Id.; see also

_Appleyard_, 754 F.2d 955 (reversing a denial of certification of a class challenging Alabama Medicaid admissions procedures).

Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories. _See_ _De La Fuente v. Stokely-Van Camp, Inc._, 713 F.2d 225, 232 (7th Cir. 1983) (affirming certification of a class challenging a farmworker recruitment system even though some of the named plaintiffs had not worked for the defendant company during the disputed years and even though it was not clear that all plaintiffs had worked in the specific employment situation as the named plaintiffs).

Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice. _See_ _General Tel. Co. of Southwest v. Falcon_, 457 U.S. at 157-59, 102 S. Ct. at 2370-71. In _Falcon_, the Supreme Court reversed certification of a class of Mexican Americans challenging hiring and promotion actions, which had been affirmed by the Fifth Circuit, on typicality grounds. Rather than standing for the proposition that a named plaintiff complaining of one specific injury (Falcon's not being promoted) cannot represent a class suffering perhaps a different injury (not being hired), _Falcon_ merely requires that the class representative prove that there is a pervasive violation and that the various injuries alleged all stem from that common violation. _Id_. _See_ _also_ _Wilder v. Bernstein_, 499 F. Supp. 980, 992-94 (S.D.N.Y. 1980) (holding that

a claim against the overall child care system states a claim against the entire system and each of its components).

## D.  The Requisites of Rule 23(b)(2)

Besides meeting the requirements of Rule 23(a), plaintiffs must also satisfy one of the requirements of 23(b). The district court alternatively based its denial of certification on its conclusion that the plaintiffs failed this test.  The plaintiffs maintain that their action satisfies Rule 23(b)(2), which is met if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  FED. R. CIV. P. 23(b).

In Weiss v. York Hospital we explained that this requirement is almost automatically satisfied in actions primarily seeking injunctive relief.  745 F.2d at 811.  "When a suit seeks to define the relationship between the defendant(s) and the world at large, ... (b)(2) certification is appropriate." Id.  Commentators have also noted that the language of (b)(2) does not even require that the defendant's conduct be directed or damaging to every member of the class.  See 1 NEWBERG & CONTE § 4.11, at 4-37.  It is the (b)(2) class which serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment. In fact,  the injunctive class provision was "designed specifically for civil rights cases seeking broad declaratory or

injunctive relief for a numerous and often unascertainable or amorphous class of persons." Id. at 4-39.

What is important is that the relief sought by the named plaintiffs should benefit the entire class. The general applicability requirement of (b)(2) also aims to prevent prejudice to absentees by mandating that the putative class "demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent application of principles of res judicata." Hassine, 846 F.2d at 179. But injunctive actions, seeking to define the relationship between the defendant and the "world at large," will usually satisfy this requirement.

### E. Precedents in Child Welfare Cases

A review of the jurisprudence in this area discloses that many very similar lawsuits challenging the provision of services to foster children have been certified despite the varieties of factual differences that characterize the plaintiffs in each case and despite the variety of legal claims any one class may make. Many of these cases also involve claims by classes that include differently situated plaintiffs, who were not, at the time of the litigation, suffering identical injuries from the defendants' conduct.

For example, in a class action brought in Vermont state court,[16] the court certified a class of handicapped children challenging the provision of child welfare services over defendants' commonality and typicality objections based on factual differences of class members.  The court explained:

> Certainly, the plaintiffs will have different stories to tell.  However, it is apparent from the pleadings that plaintiffs legal claims are based on a common factual predicate:  the defendants alleged failure to fulfill their duties in providing for a coordinated system that protects the welfare of class members.  The individual treatment of handicapped youths, while important and crucial to plaintiffs' case, only serves to support a larger inquiry into the functioning of the state structure appropriated for administering programs that serve the handicapped.

Jane T. v. Morse, No. S-359-86 WnC, slip op. at 4, (Vt. St. Ct., June 12, 1987).

Courts have also certified class actions alleging a variety of legal claims falling under the rubric of a systemic failure to provide certain child welfare services.  See e.g., LaShawn A. v. Dixon, 762 F. Supp. 959, 960 (D.D.C. 1991).  In that case the class challenged the alleged failure of the District of Columbia Department of Human Services to initiate timely investigations into reports of abuse or neglect, the failure to provide services to families to prevent the placement of children in foster care, the failure to place those who may not safely remain at home in appropriate foster homes and institutions, the failure to develop case plans for children in

---

[16]    Vermont's class certification statute, V.R.C.P. 23, is almost identical to Federal Rule 23.

foster care, and the failure to make permanent placements. The class included foster children under the care of the DHS and children reported as abused or neglected though not yet in the care of the DHS. The court certified the class.

Another federal court allowed a class of children in the custody of a child welfare agency to challenge the agency's failure to provide children with follow-up caseworkers to work with the family, to arrange for appropriate services, and to oversee the fulfillment of the children's medical and educational needs. The action requested a declaratory judgment that the policies violated the Fourteenth Amendment, an injunction requiring the defendant to submit a plan assuring legally adequate care and treatment, and the appointment of a master to determine the adequacy of the plan and to oversee its implementation. The court granted class certification. B.H. v. Johnson, 715 F. Supp. 1387, 1389 (N.D. Ill. 1989).

There are many additional examples of certification of class actions asserting a broad range of grievances closely resembling those alleged in this case. See e.g., Smith v. Organization of Foster Families, 431 U.S. 816, 822 n.7, 97 S. Ct. 2094, 2098 n.7 (1977) (perceiving no error in district court's certification of foster parents, children, and intervening natural parents); Lynch v. Dukakis, 719 F.2d 504, 506 n.1 (1st Cir. 1983) (affirming district court's preliminary injunction, in favor of a class of foster children and their natural and foster families, ordering state social services department to comply with case plans and to review obligations of foster care

maintenance program); <u>Eric L. v. Bird</u>, No. 91-376-D slip op. (D.N.H. Dec. 16, 1993) (certifying class of all New Hampshire children concerning whom the State Division of Children and Youth Services (DCYS) had received a complaint of abuse or neglect, who are the subject of a petition brought pursuant to state law or are entitled to services from DCYS as a result of court proceedings, and all children with disabilities who are placed either in twenty-four hour residential facilities or in foster care and whose families are in need of support services); <u>David C. v. Leavitt</u>, No. 93-C-206W slip op. (D. Utah May 5, 1993) (certifying over adequacy-of-representation objections a class of all children who are or will be in Utah's DHS custody or will be placed in a foster home, a group home, institutional care or a shelter and children who are or will be known to DHS by virtue of report of abuse or neglect).

Admittedly, these cases did not (with the exception of <u>Jane T.</u>) discuss commonality and typicality; nevertheless, the trial judges had to be satisfied that the requisites of Rule 23 (or its state law equivalent) were met in order to certify the classes. We find it persuasive that these courts have found quite similar actions to comply with Rule 23's requirements.

### III. DID THE DISTRICT COURT ABUSE ITS DISCRETION IN DENYING CLASS CERTIFICATION?

Appellants contend that the district court abused its discretion when it denied certification. We agree. In our view,

the district court applied an overly restrictive legal standard in evaluating the requirements of Rule 23 and in denying class certification. Although the court took cognizance of cases holding that common questions need only exist -- not predominate -- for (b)(2) actions, it nevertheless proceeded to demand higher demonstrations of commonality and typicality than the rule requires. It is axiomatic that errant conclusions of law constitute an abuse of discretion. See International Union, United Auto, etc. v. Mack Trucks, Inc., 820 F.2d 91, 95 (3d Cir. 1987), cert. denied, 499 U.S. 921, 111 S. Ct. 1313 (1991).

### A. Commonality

As to commonality, the district court concluded that: "Not one of the common legal issues asserted by plaintiffs applies to every member of the proposed class . . . . The children's claims are based upon different legal theories depending on the individual circumstances of that child . . . . The services required to meet the needs of one child are vastly different from that of another child." (Mem. Op. at 7).[17] These statements are at odds with the applicable standard. Plaintiffs are challenging common conditions and practices under a unitary regime. All the children in the class are subject to the risk that they will suffer from the same deprivations resulting from the DHS's alleged violations. Because the nature of foster

---

[17] Unless otherwise specified, Mem. Op. citations refer to the Memorandum and Opinion issued on January 6, 1992.

placement is transitory and thus inherently variable, it is unreasonable to require that all plaintiffs suffer from the same injury simultaneously.

Defendants maintain that "[p]roving systemwide failure does not establish that the law has been violated as to any child." (Br. of Appellees at 16). However, the commonality standard requires only that a putative class share either the injury or the immediate threat of being subject to the injury. See supra at typescript 18. Here, systemwide deficiencies either violate class members' rights currently or subject them to the risk of such a violation.

Furthermore, all of the plaintiffs seek to force the DHS to comply with its statutory mandates, and all of their injuries alleged here would be cured if DHS remedied the systemic deficiencies. Insofar as the children challenge the scheme for the provision of child welfare services, their claims share a common legal basis. Class certification for a similar attack on New York's child welfare system was upheld in Wilder v. Bernstein, 499 F. Supp. 980, 994 (S.D.N.Y. 1980) ("[In alleging that defendants] created an overall child-care system which discriminates on the basis of race and religion, plaintiffs have stated a claim against the entire system and each of its components."). Thus, we find the plaintiffs' attack on the DHS's systemic deficiencies in providing legally mandated child care services to be a sufficiently common legal basis to support class certification here.

The differing degree and nature of the plaintiffs' injuries also do not preclude a finding of commonality. Just as in Califano, where the amounts of each class member's claim differed but where the class members nonetheless shared a common statutory claim, the putative class members in this case share the common legal claim that DHS's systemic deficiencies result in widespread violations of their statutory and constitutional rights, irrespective of their varying individual needs and complaints. As in Califano, where the plaintiffs challenged the conduct of the defendant towards the class, the children here challenge DHS's conduct, which is generally applicable to them. Also, as in Califano, where it did not matter that the amounts of the individuals' claims differed, it does not matter here that the children suffer in varying ways from the DHS's violation of its statutory mandates.

When it concluded that "not one factual issue pertains to the entire proposed class," the district court committed the error of overly fragmenting the plaintiffs' claims. A similar approach taken in another case, Ward v. Luttrell, 292 F. Supp. 165 (E.D. La. 1968) (denying certification to a claim by female workers challenging state labor laws that denied overtime pay), has been characterized as "contrary to the clear language of the rule" and "irreconcilable with the majority of decisions on the common question issue." See 1 NEWBERG & CONTE §3.11, at 3-59. It is true that each plaintiff here has his or her own circumstances, but every plaintiff shares the essential circumstance of being in the custody or the care of DHS.

Individual factual differences do not affect the central allegation that the DHS violates various statutory and constitutional rights in its provision of child care services to the class.

Because of the district court's capacity to bifurcate (or trifurcate) the proceedings, the individual circumstances of the children, even if they affect the issues presented by this case, would not preclude certification. And in this suit for declaratory relief, the court can substantially avoid examining those individualized circumstances, for the relief requested by the plaintiffs focuses entirely on the effort to reform defendants' conduct so that it complies with the various legal provisions raised here. Thus, while the children will undoubtedly be affected by the district court's rulings, the court need not consider the individual children's peculiar circumstances in fashioning its order.

The court's heavy emphasis on the factual differences of the 6,000 children also suggests that it did not take sufficient cognizance of the nature of the relief sought. Because the complaint does not seek damages, the factual differences are largely irrelevant. The complaint prays for declaratory and injunctive relief. Factual differences among the situations of the plaintiffs will thus not preclude the district court from determining whether the class claims are meritorious, or from ordering the appropriate relief in the event that they are.

The district court's rendering of the commonality requirement also goes astray in its analysis of Hassine v. Jeffes, 846 F.2d 169 (3d Cir. 1988). Notwithstanding the clear language of that decision, the district court here seems to have relied on Hassine to suggest that all of the named plaintiffs must suffer from the same harm. (Mem. Op. at 7). The plaintiffs in Hassine, however, complained of over-crowding, though they were not actually double bunked, and of deficient medical and mental health services, though they did not at that time require either of those services. It was enough for the Hassine court that some plaintiffs might at some point require a variety of those services and thus be subjected to the risk of deprivation by the pervasively deficient system. 846 F.2d at 178 n.5. Obviously, not all of the Hassine class members would need medical services, or the same medical services. By the reasoning of Hassine, then, the fact that some of the plaintiffs here do not need some of the services that are allegedly deficient does not, contrary to the district court's conclusion, preclude them from attacking a system that fails to provide those services.

The cases cited by defendants, where certification was denied on commonality grounds, are also easily distinguished. In Stott v. Haworth, 916 F.2d 134 (4th Cir. 1990), the court denied certification of a class of government employees who had suffered adverse employment consequences allegedly resulting from improper partisan concerns. In that case, unlike this one, whether or not the asserted violations existed depended on individual determinations of the nature of the position of each plaintiff.

Here, the violations exist independently of individual children's circumstances; it is established by reference to the objective statutory and constitutional criteria.[18]

In Stewart v. Winter, 669 F.2d 328 (5th Cir. 1982), prisoners challenging the conditions of prisons throughout the state of Mississippi were denied certification on commonality grounds. The Stewart court was daunted by the prospect of 82 separate hearings to evaluate under the appropriate totality-of-the circumstances test whether each of the counties' jails violated the plaintiffs' Eighth Amendment rights. The situation here is quite different. The plaintiffs challenge unitary systems and a much more localized service, i.e., the provision of child welfare services in Philadelphia. Furthermore, the question of liability in this case can be evaluated relative to the applicable (and generalized) statutory standards, unlike in Stewart where the Eighth Amendment claims would necessitate individualized hearings. At all events, we are dubious as to the correctness of Stewart, and note that in Pennsylvania a similar statewide class action has been certified and is ongoing (at the trial stage). See Austin v. Pennsylvania Dep't of Corrections, No. 90 Civ. 7497 (E.D. Pa. certified March 5, 1992)

---

[18] Defendants also cite In re Fibreboard Corp., 893 F.2d 706 (5th Cir. 1990), as an example of a case that failed to meet commonality requirements. However, this case is clearly distinguishable. Fibreboard was a mass tort action seeking damages, and certification was denied on the basis that common issues did not predominate, the (b)(3) inquiry, not that there was no common issue, the proper (a)(2) inquiry.

In contrast to the cases we have distinguished, this case clearly presents common legal issues under the applicable standard. The children challenge DHS's pattern of conduct, which is subjecting them all to violations of their statutory and constitutional rights. Because of the dearth of trained caseworkers, for example, DHS (allegedly) fails to investigate reports of abuse and neglect promptly or adequately and fails to reliably provide the children in its care with written case plans, with appropriate placements, with proper care while in custody, and with periodical dispositional hearings. Similar violations of the rights of children in custody to be free from harm can (allegedly) be traced to the scarcity of properly trained foster parents or to DHS's lack of an adequate information system.

Moreover, trial will not require an individualized inquiry into a vast network of institutions. It is only the *Philadelphia* DHS's provision of the mandated services that is at issue, and the nature of the violations can be verified by reference to the applicable statutes; it is not necessary to examine each plaintiff's circumstances to evaluate the claims. The fact that all plaintiffs are subject to the risk of deprivation of services to which they are currently entitled (or which they may at some point in the future require) suffices to support their common claim against DHS.

### B. Typicality

The district court also misconstrued the relevant standard of typicality. As with its analysis of the commonality

issue, the court appeared to rely on the proposition that the plaintiffs were not challenging precisely the same conditions and practices because the services required by law differ depending on a child's individual situation. However, General Tel. Co. of the Southwest v. Falcon, supra, assures that a claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice. Plaintiffs in this case attack a systemic failure by DHS to provide a broad range of legally mandated services. At any one time, the plaintiffs do not suffer from precisely the same deficiency, but they are all alleged victims of the systemic failures. Moreover, they each potentially face all of the system's deficiencies. A child not currently needing psychological services may well require such services sometime while in DHS custody. A child lucky enough to be receiving permanency planning, for example, faces the immediate threat of losing that service in a system characterized by the widespread absence of such services. Because being subject to the risk of an injury suffices under Hassine for both the commonality and the typicality inquiries, plaintiffs can allege these harms.

Furthermore, the fact that the common theme of attacking DHS's systemwide failure to comply with its legal mandates is equally central to the claims of the named plaintiffs as it is to the claims of the absentees reinforces the characterization of the plaintiffs' claims as typical. Indeed, this theme is central to each plaintiff. It bears remembering that the plaintiffs here seek only injunctive and declaratory

relief; there are no other claims that could compromise the named plaintiffs' pursuit of the class claims.

Because there are no individual claims as such, the differences among the plaintiffs do not affect the central claim that DHS violates a variety of the children's (putative class members') constitutional and statutory rights by failing to provide mandated welfare services. We emphasize that the individual differences in the children's circumstances might indeed militate against certification if the action sought certification under 23(b)(3) because a court would need to evaluate those differences in the event that the plaintiffs prevailed and were entitled to monetary damages. In fashioning injunctive relief, however, a court would focus on the defendants rather than on the plaintiffs. Whether there are fifty or 6,000 plaintiffs, as in this case, the court's task is essentially the same. The court would not need to assure that every child received an "appropriate" case plan, for instance. Instead, the court would assure that the DHS had an adequate mechanism for generating and monitoring appropriate case plans. To the extent that some of the claims raised by the plaintiffs truly do require the court to engage in individualized determinations, the court retains the discretion to decertify or modify the class so that the class action encompasses only the issues that are truly common to the class. See Fed. R. Civ. P. 23(c)(4).

Moreover, the prospect of class certification in this case does not present the sorts of dangers that the typicality requirement was intended to avoid. There is no danger here that

the named plaintiffs have unique interests that might motivate them to litigate against or settle with the defendants in a way that prejudices the absentees. Many courts have noted that the "individual interest in pursuing litigation where the relief sought is primarily injunctive will be minimal." Weiss, 745 F.2d at 808 (citing 7 CHARLES WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1771 (1972)). Indeed, because this suit seeks only declaratory and injunctive relief, the named plaintiffs are simply not asserting any claims that are not also applicable to the absentees. The common claims here are the only claims and must perforce occupy the same position of centrality for all class members. The putative class clearly satisfies the typicality requirement of Rule 23(a)(3); the district court abused its discretion in ruling that it did not.

C. The 23(b)(2) Showing

The district court also found that the plaintiffs failed to make the requisite showing under Rule 23(b)(2), concluding that the claims for relief were not generally applicable to the class. (Mem. Op. at 21). In so holding, the court failed to give effect to the proper role of (b)(2) class actions in remedying systemic violations of basic rights of large and often amorphous classes. While it is true that not all of the orders issued will immediately benefit every plaintiff, every plaintiff will benefit from relief designed to assure DHS compliance with the applicable standards.

Plaintiffs have alleged that systemic failure causes the DHS to violate various mandates under federal statutory and

constitutional provisions. Because the children in the system are comparably subject to the injuries caused by this systemic failure, even if the extent of their individual injuries may be affected by their own individual circumstances, the challenge to the system constitutes a legal claim applicable to the class as a whole. An order forcing the DHS to comply with their statutory and constitutional mandates would constitute relief generally applicable to the entire putative class. Indeed, the violations alleged here are precisely the kinds targeted by Rule 23(b)(2). The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights. See Rules Advisory Committee Notes to 1966 Amendments to Rule 23, 39 F.R.D. 102 (1966); 1 Newberg & Conte, § 4.11 at 4-39.

The fact that the plaintiffs in this case seek only injunctive and declaratory relief, not individual damages, further enhances the appropriateness of the class treatment. Clearly, this action aims to define the relationship of the defendants to the universe of children with whose care the defendants are charged. Plaintiffs simply ask the district court to declare the DHS's current provision of child welfare services to the plaintiffs to be violative of the cited statutory and constitutional provisions and to order DHS to implement a system that would enable it to comply with its legal mandates in the provision of these services. Furthermore, all of the class members will benefit from relief which forces the defendant to

provide, in the manner required by law, the services to which class members either are currently or at some future point will become entitled.

While it is true that commonality, typicality, and the Rule 23(b)(2) general applicability requirements all manifest a concern about judicial efficiency and manageability, the district court's arguments on this score miss the mark. The district court clearly erred by finding that "[i]t would be impossible to conceive of an Order this court could make granting class-wide injunctive relief which could address the specific case-by-case deficiencies in DHS's performance . . . ." (Mem. Op. 10/13/93 at 4-5). But a court could, for example, order the DHS to develop training protocols for its prospective foster parents. Such an order would not, contrary to the district court's view, "create an enforcement problem of staggering proportions." Id. The district court will thus not need to make individual, case-by-case determinations in order to assess liability or order relief. Rather, the court can fashion precise orders to address specific, system-wide deficiencies and then monitor compliance relative to those orders. Other courts have ordered the relief required by these types of cases without finding it to be either unworkable or unenforceable. For example, in L.J. v. Massinga, 699 F.Supp. 508, 510 (D. Md. 1988), the court approved a consent decree essentially embodying the terms of the preliminary injunction it had previously issued and implemented. The decree required the defendant to review the status of each foster home where there had been a report of maltreatment; visit each child

in a foster home on a monthly basis; visit each child who had been the subject of a report of maltreatment on a weekly basis; assure sufficient staff and resources to ensure that appropriate medical care was rendered; and provide a written copy of any complaint of maltreatment of a foster child to the juvenile court and the child's attorney.  This is precisely the sort of order that is requested in this case.  Because this suit challenges conduct generally applicable to the class and because the court can enter appropriate declaratory and injunctive relief, this action patently satisfies the (b)(2) standard.

## IV.  CONCLUSION

Because the claims alleged in the plaintiffs' complaint clearly meet the requirements of Rule 23, the district court's determination that they did not constitutes an abuse of discretion.  We will therefore reverse the orders of the district court and remand for further proceedings consistent with this opinion.  In so doing, we intimate no view on the merits, nor, should the plaintiffs succeed on merits, on the scope of the court's remedial power or on the appropriate remedy.